

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| | ) |
| VICTOR A. ANINAO, | ) CASE NO. 11-80407-G3-7 |
| | ) |
| Debtor, | ) |
| | ) |

MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Trustee's Motion to Compel and For Sanctions" (Docket No. 55). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Victor Antonio Aninao ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on August 1, 2011. Debtor filed a notice of conversion to Chapter 7 on November 3, 2011. Janet S. Casciato-Northrup ("Trustee") is the Chapter 7 Trustee. Debtor is an attorney. Debtor is represented in the instant case by Eloise Guzman.

Among the assets listed in Debtor's Schedule B is Debtor's interest in a contingent attorney fee for Debtor's representation of Odessa Williams and Alfred Elder in a personal injury suit against Juan Martinez.  In Schedule B, Debtor noted, with respect to the Williams and Elder personal injury suit: "Debtors last offer was $48,000 as 04/2011 1/3 is $16,000, clients medical bills over $28,000 no settlement."  (Docket No. 13).  Debtor testified that the suit is presently pending in the 130th Judicial District Court of Matagorda County, Texas.

Debtor appeared for a meeting of creditors, after the conversion to Chapter 7, on December 8, 2011.  Debtor testified that at the meeting, the Trustee requested documents, and advised that the meeting would be continued to January 12, 2012.

On December 13, 2011, the Trustee filed a report indicating that the meeting of creditors had concluded. (Unnumbered Docket Entry Dated 12/13/2011).

Debtor testified that he provided the requested documents to Guzman on December 22, 2011, and that the documents were forwarded by Guzman to Trustee.

On December 28, 2011, Trustee's counsel, Rhonda Chandler, sent email to Guzman, proposing that Debtor communicate to Debtor's clients, Williams and Elder, a proposal by Trustee to settle Williams' and Elder's personal injury claims against Martinez for $56,000.  Guzman replied shortly thereafter in an

email indicating that she had forwarded Chandler's email to Debtor.  (Trustee's Exhibit 2).

Debtor testified that Martinez' insurance company had offered $56,000, of which $48,000 was allocated to Williams, and $8,000 was allocated to Elder, during April, 2011.  He testified that he had communicated that offer to Williams and Elder in April, 2011, and that, on his advice, both Williams and Elder had rejected the offer.

Debtor testified that he did not understand the December 28, 2011 request made by Trustee, because it appeared that he was being asked to submit to his clients a settlement offer that had been rejected months earlier.  He testified that he communicated to Guzman that he did not understand the request. He testified that he did not communicate directly with Trustee or Chandler.

Chandler followed her December 28, 2011 email to Guzman with an email on January 19, 2012 In Chandler's second email, she requested that Debtor "ask the plaintiffs in the personal injury suit for a decision no later than January 26, 2012."  (Trustee's Exhibit 3).

Neither Debtor nor Guzman responded to Chandler's January 19, 2012 email.  On March 6, 2012, Chandler sent a third email to Guzman.  In the third email, Chandler proposed an arrangement in which Debtor would continue his representation of

3

Williams and Elder, and proposed a split in the fees Debtor was to obtain between Debtor and the bankruptcy estate.  Trustee requested a response from Guzman by March 23, 2012.  (Trustee's Exhibit 4).

Debtor testified that he communicated to Guzman on or before March 23, 2012 that he accepted the Trustee's proposal.  He testified that he believed the proposal made on March 6, 2012 was the only valid proposal.

Chandler testified that she did not receive a response from Debtor by March 23, 2012.  She testified that her next action was to send an email to Guzman requesting a response.  Chandler sent an email to Guzman on April 9, 2012, requesting a response.  Her fourth email stated in part, "I am happy to speak with the Debtor directly if you give your permission, but please let him know that the Trustee will take action if he does not respond by the close of business on April 20, 2012."  (Trustee's Exhibit 5).

On April 9, 2012, Guzman responded to Chandler's email of the same date.  Guzman's response states:  "The debtor is in agreement with your proposal.  You may contact directly."  (Trustee's Exhibit 6).

Chandler testified that, on April 13, 2012, she telephoned Debtor, and left a voice mail message.  She testified

that she telephoned a second time, on April 23, 2012, and spoke with Debtor.

Chandler and Debtor have slightly differing accounts of the April 23, 2012 telephone conversation.  Chandler testified that in the call, she identified herself, and told Debtor that she needed to discuss with him how to handle the contingent fee case.  She testified that Debtor told her that he was in a doctor's office, and that he would have to call back the next day.

Debtor testified that Chandler told him she wanted to discuss the split of attorney fees on the contingent fee case, and expressed that he was surprised that she was asking, because he had communicated to Guzman that he had accepted the Trustee's proposal for a split of the fees.  He testified that he told Chandler that he didn't have the file with him at the time, but that "whatever proposal that my lawyer had told you we accepted is fine."

Debtor admits that he told Chandler that he would call her back, and that he forgot to do so.

On Friday, April 27, 2012, Chandler sent a fifth email to Guzman, stating that Debtor had not returned her call, and stating that if she did not speak with Debtor on or before "the close of business on Monday," (April 30, 2012), the "Trustee will be forced to take action, which is likely to include seeking

sanctions against Mr. Aninao for the costs incurred by the estate based on his repeated failure to cooperate."  (Trustee's Exhibit 7).

Chandler testified that she received no response to her April 27, 2012 email.  She testified that she then began preparing the instant motion.

In the instant motion, which was filed on May 14, 2012, Trustee seeks an award of monetary sanctions.  Trustee initially sought $1,970 (Docket No. 55), but Chandler testified at the hearing on the instant motion that Trustee has incurred attorney fees of $7,323.50, and seeks an award in that amount.[1]

The court finds the testimony of both Chandler and Debtor to be credible.

## Conclusions of Law

Section 521(a)(3) of the Bankruptcy Code requires that the debtor in a case in which a trustee is serving "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties" under Title 11.  11 U.S.C. § 521(a)(3).

The term "cooperate" is broad, and requires that whenever the trustee calls upon the debtor for assistance in

---

[1] Trustee also sought an order compelling Debtor to contact Trustee to finalize an agreement regarding the contingent fee case.  The parties subsequently have agreed to the language of a stipulation.  The stipulation was filed (Docket No. 78), and was signed by this court (Docket No. 81).  Thus, the portion of the instant motion seeking an order compelling Debtor's action is moot.

performance of the trustee's duties, the debtor is required to respond, at least if the request is not unreasonable. In re Morey, 416 B.R. 364 (Bankr. D. Mass. 2009), citing In re Stinson, 221 B.R. 726 (Bankr. E.D. Mich. 1998).

The Bankruptcy Code does not specify a remedy for failure of a debtor to cooperate with a trustee. A trustee has several remedies for a debtor's failure to cooperate. Courts have considered such failure to be cause for dismissal under Section 707(a) of the Bankruptcy Code. See In re Ventura, 375 B.R. 103 (Bankr. E.D.N.Y. 2007). In exceptional cases, failure to cooperate with the Trustee has been held to be grounds for denial of discharge, see In re Munni, 2011 BR 1885720 (Bankr. D. Md. 2011). See also In re Morey, 416 B.R. 364 (Bankr. D. Mass. 2009) ("[I]n most cases, the consequences of failing to cooperate with the trustee is denial of the debtor's discharge.")

At least one court has awarded sanctions where a debtor has failed to cooperate with a Trustee. See In re Pulliam, 2011 B.R. 1332040 (Bankr. D. Mont. 2011). In Pulliam, the court, prior to awarding sanctions, had ordered the debtor to provide information to the Trustee regarding property of the estate. The debtor failed to comply, and was held in contempt. The sanctions were awarded to compel the debtor's compliance with the court's previous order. As distinguised from the Pulliam case, the Trustee in the instant case did not first seek an order directing

the Debtor to cooperate, before seeking sanctions.  Rather, Trustee, in her first motion bringing to the attention of the court Debtor's alleged failure to cooperate, seeks an award of attorney fees against Debtor as a monetary sanction.

Trustee cites In re Cochener, 360 B.R. 542 (Bankr. S.D. Tex. 2007) for the proposition that sanctions should be awarded for causing unnecessary delay and expense to the estate.  In Cochener, the court sanctioned a debtor's attorney, based on extremely egregious conduct, including, inter alia, instructing the debtor not to appear at the meeting of creditors, and filing a motion to dismiss containing blatantly false factual and legal contentions for the purpose of hindering the trustee's examination of the debtor.

In the instant case, it is clear that Trustee's counsel became increasingly frustrated at what appeared from her perspective to be the Debtor's failure to cooperate.  However, it also appears that Debtor was attempting to cooperate, by timely accepting the second proposal made by Trustee when it was communicated to him.  It appears that there was ineffective communication between Guzman and Chandler, and perhaps between Guzman and Debtor, both as to which of the proposals Debtor had accepted, and as to whether Chandler should communicate with Guzman or with Debtor directly.  However, the court concludes

that the mistakes in communication in the instant case are not so egregious as to require an award of sanctions.

Based on the foregoing, a separate Judgment will be entered denying the "Trustee's Motion to Compel and For Sanctions" (Docket No. 55).

Signed at Houston, Texas on July 27, 2012.

*[signature: Letitia Z. Paul]*

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE